**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

| | | |
|---|---|---|
| **LINDA HAUCK as personal representative** | ) | |
| **of the Estate of Deborah A. Chambers** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **CIVIL NO. 1:18-cv-00471-KG-LF** |
| | ) | |
| **WABASH NATIONAL CORPORATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR**
**PROTECTIVE ORDER REGARDING PLAINTIFF'S EXPERT PERRY PONDER**

**COMES NOW** Plaintiff Linda Hauck, as personal representative of the Estate of Deborah

A. Chambers, deceased, by and through her counsel, and for her Memorandum in Opposition to

Defendant's Motion for Protective Order regarding Plaintiff's expert, Perry Ponder, states as

follows:

### INTRODUCTION

In this wrongful death action, Plaintiff claims that Defendant Wabash National Corporation

(hereinafter "Wabash") designed, manufactured and sold a defective and unreasonably dangerous

product when it failed to equip its semi-trailer with any shield, guard or other device to prevent

vehicles, such as that driven by Deborah. Chambers, from under-riding the side of the semi-trailer

during a foreseeable collision event.  In connection with Plaintiff's Motion to Compel [Doc. No.

32], the Court order that Defendant Wabash produce certain information and materials in response

to discovery, including, *inter alia,* items pertaining to Wabash's side underride guard displayed in

2017.  Through the current Motion, Defendant Wabash seeks to preclude Plaintiff's designated

liability expert, Perry Ponder, from "reviewing Wabash's documents regarding side impact guard

designs," claiming such disclosure would put it at a "competitive disadvantage." Defendant Wabash does not specify whether such request extends to all documents that may be produced which pertain to said side underride guards, or specific materials. Regardless, it is clear that there is not "good cause" for such a protective order, as established by the facts and circumstances at issue.

Defendant Wabash's argument is akin to a person who is contemplating entering a race complaining about another who was already finished. By Defendant Wabash's own description, the materials at issue pertain to a "theoretical side underride guard design[ed] in 2012." (*See* Defendant's Supplemental Responses, at Interrogatory No. 14, attached as **Exhibit 1**). Compare this to Perry Ponder, an individual that has designed, developed and tested (including testing by the Insurance Institute for Highway Safety ("IIHS")) a side underride guard that is already commercially available. (*See "IIHS Tests Show Benefit of Side Underride Guards for Semitrailers,"*[1] attached as **Exhibit 2**; Angel Truck Side Guards, attached as **Exhibit 3**, Request for Quotation Form, attached as **Exhibit 4**, Installation Manual for Dry Freight Trailers ANGELWING Model DF-53-12, attached as **Exhibit 5**) As such, to even attempt to classify Defendant Wabash and Perry Ponder as "competitors" is tenuous at best.

Indeed, Defendant Wabash's allegation of confidentiality itself is tenuous, given that it displayed this side underride guard at a trade show in 2017, making its design available for viewing to the industry in which it competes. (*See "Wabash prototype: Side underride guard with aero skirt,"* attached as **Exhibit 6**[2]). Moreover, in 2012, Defendant Wabash obtained a patent with respect to this side underride guard. (*See* Patent No. US 8,162,384 B2, Side Underride Cable System for a Trailer, attached as **Exhibit 7**). Given this patent, protection mechanisms already

---

[1] https://www.iihs.org/iihs/news/desktopnews/iihs-tests-show-benefits-of-side-underride-guards-for-semitrailers
[2] https://www.trailer-bodybuilders.com/trailers/wabash-prototype-side-underride-guard-aero-skirt

exist, to the extent the patent is valid and enforceable. Alternatively, this Court may employ measures in its protective order to limit Mr. Ponder's use of this information while still allowing him to review it for purposes of this case.

Thus, the current Motion should not truly be viewed as one related to protection of allegedly confidential information. Instead, it is nothing more than an attempt to deprive Plaintiff of the services of an exceptionally qualified expert in the field at issue in this litigation. (*See* Curriculum Vitae of Perry Ponder, attached as **Exhibit 8**). Indeed, Defendant recognizes in its Motion that Perry Ponder is as "an engineer who commonly testifies against trailer manufactures in cases involving rear and side collisions." Given the above, it is clear that under the required balancing analysis, Plaintiff's need for the disclosure to her chosen expert outweighs Defendant Wabash's alleged concerns of confidentiality or competitive disadvantage.

<u>ARGUMENT AND AUTHORITY</u>

**A. THE LEGAL STANDARD**

"Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure provides, in relevant part, that for good cause shown, the Court may 'issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense including ... that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way.' " *Spurlock v. Townes*, No. CIV 09–0786 WJ/DJS, 2010 WL 11470589 at *2 (D.N.M. 2010) (citing to FED. R. CIV. P. 26(c)(1)(G). "A party seeking to resist disclosure under must first establish that the information sought is trade secret or other confidential research, development, or commercial information and then demonstrate that its disclosure might be harmful." *Id.* (citing to *MGP Ingredients, Inc. v. Mars Inc.*, 245 F.R.D. 497, 500 (D. Kan. 2007) and *Centurion Indus., Inc. v. Warren Steurer & Assocs.*, 665 F.2d 323, 325 (10th Cir. 1981)).

"Once these requirements are met, the burden shifts to the party seeking discovery to establish that the disclosure of confidential information/trade secrets is relevant and necessary to the action." *Id.* "Finally, the Court must balance the need of the party seeking discovery of the trade secrets and confidential information against the opposing party's claim of injury resulting from the disclosure." *Id.*

"The party seeking a protective order bears the burden to show good cause for a protective order, and the party must submit a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements. *United States v. Copar Pumice Company, Inc.*, 2012 WL 12910522 at *5 (D.N.M. 2012). Good cause exists for a protective order only "when a party demonstrates that 1) the material sought to be protected is confidential; and 2) that disclosure will create a competitive disadvantage for the party." *Id.*

"Furthermore, when a party asserts that the discovery process will cause competitive injury because it will result in the revelation of trade secrets, the party cannot rely solely upon conclusory statements, 'but must present evidence of specific damage likely to result from disclosure.'" *National Hand Tool, Corp. v. United States*, 14 Ct. Int'l Trade 490, 493 (1990) (quoting *Culligan v. Yamaha Motor Corp., USA*, 110 F.R.D. 122, 125 (S.D.N.Y.1986)). "When, as is the issue here, disclosure of confidential information to a third-party consultant is opposed by the disclosing party, this court will balance the movant's interest in selecting the consultant most beneficial to its case, considering the specific expertise of this consultant and whether other consultants possess similar expertise, against the disclosing party's interest in protecting confidential commercial information from disclosure to competitors." *BASF Corp. v. U.S.*, 321 F. Supp.2d 1373, 1378 (Ct. Int'l Trade 2004) (citation omitted)).

### B. DEFENDANT WABASH IS NOT A TRUE COMPETITOR OF PERRY PONDER

Defendant Wabash asserts that Perry Ponder is its competitor with regard to side impact guard development. However, a review of reality reveals that Defendant Wabash has made nothing more than a "conceptual model." (*See* Brian Johnson letter to David Brose, 10/10/18, at p. 3, addressing "Interrogatory Nos. 14-16," attached hereto as **Exhibit 9**) ("Those statements incorrectly assume that Wabash has created a device that addresses side impact risks. At most, Wabash has a conceptual model; **it does not have a side impact guard that it has offered for sale . . . .**") (emphasis added); *see also* **Exhibit 1**, at Answer to Interrogatory No. 14) (referring to the "theoretical side impact guard design")). Compare this to Mr. Ponder, who has a commercially available product. (*See* **Exhibits 2-5**).

Given that Defendant Wabash has neither developed nor offered a production-level side underride guard, it is not reasonable to believe that Defendant Wabash would be at a competitive disadvantage by disclosure of information to Mr. Ponder, whose product Defendant Wabash could purchase today. As a result, Defendant's Motion must fail because Defendant Wabash has not and cannot establish a competitive element in reality. *See RealTimeZone, Inc. v. Halliburton Energy Services, Inc.*, 2010 WL 11626542 at *4 (D.N.M. 2010) ("Halliburton failed to refute RTZ's assertions that it was not Halliburton's direct competitor. Thus, Halliburton has not carried its burden of proving the competitive harm that would befall it by virtue of its disclosure of sensitive information to Scott.").

### C. THERE CAN BE NO COMPETITIVE DISADVANTAGE FROM DISCLOSURE GIVEN THE ACTIONS OF DEFENDANT WABASH IN MAKING THE PROTOTYPE PUBLICLY KNOWN

Even if the subject information/materials were considered in some form or fashion as a trade secret, the protections afforded thereto must be placed within reality. As set forth above, Defendant Wabash displayed this prototype at the 2017 North American Commercial Vehicle

Show, thereby disclosing its design to the entire trailer industry (as well as the public generally via news reporting). (*See* **Exhibit 6**). It is difficult to imagine how disclosure of information concerning this prototype to Perry Ponder in this case would subject Defendant Wabash to a competitive disadvantage, whereas Defendant Wabash has already touted this prototype before its true industry opponents. *See Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 484 (1974) ("By definition a trade secret has not been placed in the public domain.")).

Moreover, prior to this public industry display, Defendant Wabash made this prototype part of the public knowledge through obtaining a patent. (*See* **Exhibit 7**). Through such patent, and assuming its validity and enforceability, Defendant received the benefit of protections against all who may seek to make use of such design. However, in order to receive said benefit, Defendant Wabash was required to accept the burden of disclosing the information about this prototype to the public as a whole. "The *quid pro quo* for the limited monopoly given through grant of a patent right is a complete disclosure of the claimed invention. The statute requires that the disclosure enable one of ordinary skill in the art, using the knowledge available to such person, to make the claimed invention." *Phillip M. Adams & Associates, L.L.C. v. Dell, Inc.*, 2008 WL 4966902 at *3 (D.Ut. 2008) (citing 35 U.S.C. § 112, ¶ 1) (denying motion for protective order seeking to preclude disclosure of source code to opponent's expert).

### D. DEFENDANT WABASH HAS FAILED TO CARRY ITS BURDEN OF PROVING SPECIFIC HARM OR BALANCING IN ITS FAVOR

Defendant Wabash has failed to carry its burden with respect to presenting evidence of specific damage likely to result from disclosure of the subject information. Because of this, it cannot carry its burden to demonstrate a balancing test it its favor against Plaintiff's need for disclosure and the inherent right to select the expert of the party's choosing. "[W]hen a party asserts that the discovery process will cause competitive injury because it will result in the

revelation of trade secrets, the party cannot rely solely upon conclusory statements, 'but must present evidence of specific damage likely to result from disclosure.'" *National Hand Tool, Corp. v. United States*, 14 Ct. Int'l Trade 490, 493 (1990) (quoting *Culligan v. Yamaha Motor Corp., USA*, 110 F.R.D. 122, 125 (S.D.N.Y.1986)). When "disclosure of confidential information to a third-party consultant is opposed by the disclosing party, this court will balance the movant's interest in selecting the consultant most beneficial to its case, considering the specific expertise of this consultant and whether other consultants possess similar expertise, against the disclosing party's interest in protecting confidential commercial information from disclosure to competitors." *See BASF Corp. v. U.S.*, 321 F. Supp.2d 1373, 1378 (Ct. Int'l Trade 2004).

Here, Defendant Wabash has done nothing more than make conclusory statements in support of its claim of competitive disadvantage. It cannot establish specific harm, given the reality that exists between Defendant Wabash and Mr. Ponder, as well as its active efforts to make public the prototype side underride guard at issue. Compare this to Plaintiff, who has retained Perry Ponder, an expert with specific expertise on the issues in this case. Mr. Ponder has been involved in trailer design, including underride guard design for trailers for the entirety of his engineering career. (*See*, Affidavit of Perry Ponder, attached hereto as **Exhibit 10**, at ¶¶ 2-3). He has been retained and testified as an expert in numerous underride matters involving semi-trailers, and in every instance, courts have allowed him to review the manufacturer's design documents, testing and other documents, in most instances produced to pursuant to protective orders to which he has agreed to be bound. (*See* **Exhibit 10**, at ¶¶ 4-5). Also of note, courts have required Mr. Ponder to produce to trailer manufacturers, under the same protected status, his design and development work with respect to the side underride guard he developed, the "AngelWing" side guard. (*See* **Exhibit 10**, at ¶ 6). Mr. Ponder agrees to adhere to any protective order entered in this

case.  (*See* **Exhibit 10**, at ¶ 7).

Given the above, Mr. Ponder is uniquely situated, as compared to others, to provide expert opinion testimony in this case.  *See RealTimeZone, Inc. v. Halliburton Energy Services, Inc.*, 2010 WL 11626542 at *4 (D.N.M. 2010) ("Moreover, as the co-inventor of the Patented Process at issue in this case and as President of RTZ, Scott is the most knowledgeable person about the issues in this case."); *see also Advanced Semiconductor Materials America, Inc. v. Applied Materials, Inc.* 1996 WL 908654 at **2-3 (N.D.Cal. 1996) (granting disclosure to expert who worked and consulted in the field at issue, finding the expert was "thus uniquely qualified to testify," further acknowledging the expert's agreement to be bound by the protective order.)

Here, Defendant Wabash seeks, under the auspices of confidentiality and competitive disadvantage, to dictate to Plaintiff who may serve as her expert in this case. Certainly, Plaintiff is best served to employ an expert with specific knowledge and experience in the given field. However, it is clear that Defendant Wabash would oppose all such persons. Should such a situation be allowed to exist, Plaintiff would be unduly prejudiced.  At the very least, Defendant would clearly improperly benefit from such a decision, as Defendant's cross-examination of any expert that falls outside of the field would bring to the jury's attention the expert's lack of work on side underride guards or in the semi-trailer industry as a whole.  Defendant should not be allowed to dictate the selection of Plaintiff's experts or establish a Catch-22 situation for her experts.

"Expert witnesses in most, if not all, commercial cases are likely working, either directly or indirectly, in the industry at issue.  The risk of inadvertent disclosure . . . is thus likely present in most every case."  MariCal Inc. v. Cooke Aquaculture Inc*.,* 2018 WL6304403 at *2 (D.Maine 2018) (granting motion to allow disclosure of highly confidential information to expert with continuing relationships with manufacturers and suppliers in the industry at issue "consistent with

a party's right to retain expert witnesses the party believes will assist in prosecution or defense of a case."); *see also Nellson Northern Operating, Inc. v. Elan Nutrition, LLC,* 238 F.R.D. 544, 547 (D.Ver. 2006) (granting motion to disclose confidential information to expert who had spent career working with proteins such as those at issue in the case, including a specific protein identified in the patent, stating "[a]lthough Nellson suggests that Elan could find an expert who does not currently work in the food industry through a university food science program, Elan should not be so severely limited in its choice of experts. Expert testimony will be essential to understanding the parties' claims in this case and Elan must have latitude to choose the expert that it believes have the necessary expertise and ability to convey highly technical information to the Court.")

For these reasons, Defendant Wabash cannot establish specific harm, and even if it could, it cannot establish harm that outweighs Plaintiff's interest in selecting the expert most beneficial to her case. Thus, Defendant Wabash cannot establish good cause to preclude the disclosure of the information and materials at issue to Mr. Ponder.

### CONCLUSION

WHEREFORE Plaintiff Linda Hauck, as the Personal Representative for the Estate of Deborah A. Chambers, deceased, respectfully requests the Court enter its Order denying Defendant's Motion for Protective Order, and for such other relief as the Court may deem just and proper.

Respectfully submitted,

LANGDON & EMISON LLC

/s:/ David A. Brose
Robert L. Langdon (admitted pro hac)
David A. Brose (admitted pro hac)
Langdon & Emison LLC
911 Main Street, PO Box 220
Lexington, MO 64067

Telephone: 660-259-6175
bob@lelaw.com
david@lelaw.com

Richard J. Grodner
Grodner Law Firm
2015 Wyoming Blvd, NE, Ste. C
Albuquerque, NM 87112
rickgrodner1@comcast.net
COUNSEL FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was served on the counsel of record below via email this 4th day of January 2019.

**DICKSON WRIGHT PLLC**
Mark C. Walker     Bar No. 148359
Mario Franke       Bar No. 142397
221 North Kansas Street, Suite 2000
El Paso, TX 79901
Phone: 915-541-9322
Facsimile: 844-670-6009
mwalker@dickinson-wright.com
mfranke@dickinson-wright.com

Brian M. Johnson
300 West Vine Street
Suite 1700
Lexington, KY 40507
Telephone: (859) 899-5704
BJohnson@dickinson-wright.com
COUNSEL FOR DEFENDANT
WABASH NATIONAL CORPORATION

/s/ David A. Brose                        
Attorney for Plaintiff