# Exhibit 9



**DICKINSON WRIGHT** PLLC

300 WEST VINE STREET, SUITE 1700
LEXINGTON, KY 40507-1621
TELEPHONE: (859) 899-8700
FACSIMILE: (844) 670-6009
http://www.dickinsonwright.com

BRIAN M. JOHNSON
BJohnson@dickinson-wright.com
(859) 899-8704

October 10, 2018

VIA E-MAIL

David A. Brose
Langdon & Emison LLC
911 Main Street
Lexington, MO 64067

      RE:    *Hauck v. Wabash National Corporation*

Dear David:

      This letter responds to your letter of October 3. We thought it may be helpful to provide our perspective on your discovery requests so you can better understand our position.

      This is a case in which Wabash is being sued for not having a side impact guard affixed to a trailer that was apparently manufactured in 2000, despite the fact that no trailer manufacturers use side impact guards even today. Any documents pertaining to the subject trailer were discarded several years ago, and long before this accident happened, pursuant to Wabash's document retention policy. Wabash, therefore, has no documents regarding the subject trailer.

      This is a case in which Wabash cannot undertake its own inspection of the subject trailer, as it was not preserved. Likewise, Ms. Chambers' car was not preserved despite the fact that Ms. Hauck previously retained counsel who, in turn, retained an accident reconstructionist to inspect both the trailer and the car. We have no way of reconstructing the accident through the use of data obtained by our own reconstructionist, which is important in cases like this for a number of reasons.

      Despite having no access to the most critical evidence in the case, we are being asked to produce Wabash's engineering files for such devices as aeroskirts and rear impact guards in a case involving a side impact, along with present-day engineering files pertaining to Wabash's analysis of side impact guard designs. None of that information could possibly be relevant in a case involving a trailer manufactured 18 years ago that was struck on the side, rather than at the rear. Moreover, we do not believe any such information would be helpful to an expert who is attempting to develop a claim that a side impact guard existed and could feasibly have been used nearly two decades ago. We presume you retained an expert before filing this lawsuit and obtained at least a preliminary opinion that such a design existed, so it is unclear why the engineering files that have been requested would be pertinent to that expert's analysis. Instead, given their breadth, it appears the requests are designed to obtain information in the hope that an expert will be able to use it to

come up with a design that has never been developed, but that the plaintiff will say could have been used 18 years ago. With that background, we will address each of the issues you have raised.

Request for Admission No. 7/Interrogatory No. 8

We agree with you with regard to this inconsistency. The interrogatory response was drafted based on the assumption that "side underride protection" referred to side impact guards, which did not exist in 2000 and still do not exist today. Wabash did, however, use conspicuity tape to warn drivers of the presence of a trailer as they approached the side of it. We believe conspicuity tape could be considered a form of "side underride protection," which is why we denied Request for Admission No. 7. To the extent that Request was referring specifically to a device designed to absorb the impact of an approaching vehicle, we agree no such device was attached to the subject trailer. We would further state that we are aware of no such device ever having been attached to a trailer for any purpose other than to test it.

Interrogatory No. 2

We do not see how identifying "the universe of trailers in which the Subject Semi-Trailer falls" would be relevant to any issues in this case. The reconstructionist hired by the plaintiff's prior counsel presumably has information regarding the floor height of this trailer, and that data would not be changed by the number of similar trailers that have been manufactured. Moreover, due to the age of the trailer, Wabash has no information regarding whether the subject trailer was one of a number of trailers included in a customer's order or whether this was a single trailer purchased from a dealer.

Interrogatory Nos. 3-7/Request Nos. 6-9

Rear impact guards have nothing to do with this case. While you are correct that the height from the floor of a trailer to the road surface is roughly the same at the rear as it is at the side, we do not believe that is a sufficient basis to ask Wabash to open up its engineering files on rear impact guards in a lawsuit that does not involve a rear-end collision. As noted above, the plaintiff's reconstructionist presumably already knows the information regarding the floor height, as he had an opportunity to inspect the trailer before it disappeared. Moreover, it is not so simple to state that the risks to motorists are the same at the rear as they are at the side, just as it is inaccurate to suggest that "the details of the manners in which Wabash attempted to guard against" rear impacts are the same as they would be with regard to side impacts. The angle of impact, for example, is critical information in side impact cases, which is one of the reasons it is so important to be able to inspect the trailer. Additionally, while the National Highway Traffic Safety Administration has specified criteria that rear impact guards must meet in terms of energy absorption and the ability to withstand force, thereby providing guidance to trailer manufacturers with respect to those devices, no such regulations exist with respect to side impact guards.

With regard to our objection that the production of Wabash's files pertaining to rear impact guards would be unduly burdensome, we note that Wabash has changed the designs of its rear impact guards over the past 18 years based on substantial engineering work and testing. Even if this were a case involving a collision with the rear end of a 2000 trailer, changes made to rear impact guards years after the subject trailer was designed would not be relevant. As this case does not involve a rear-end collision, the request for these engineering files is not remotely proportional to the needs of the case.

Finally, while we understand that a protective order could be entered regarding these documents, we do not believe they should be produced in any event. For example, if we were to produce those documents in this case and were later, in a different case, to receive a request for all documents produced in cases involving side impacts (*see, e.g.*, your request for production no. 24), we would need to address again all of the reasons the later plaintiff would not be entitled to receive the documents. As documents pertaining to rear impact guards have nothing to do with this case, we see no reason to subject Wabash to future discovery disputes of that nature.

Interrogatory Nos. 11 and 13/Request No. 14

As explained in our objections, aeroskirts are neither designed nor marketed as side impact guards. The only purpose of aeroskirts is to improve the aerodynamics of the trailer and, as a result, improve the fuel economy of the trucks pulling trailers equipped with them. We do not believe any credible expert would contend that aeroskirts provide side impact protection or that they are intended to do so.

We are troubled by your statement that "Plaintiff is entitled to know about the designs of these devices to evaluate whether they could serve to provide underride protection as designed by Wabash or through modification." We presumed that you obtained at least a preliminary opinion of an expert that some type of side impact guard design was available in 2000 before filing this case. If the plaintiff is seeking to use overly broad discovery of rear impact guards, aeroskirts and conceptual designs created over a decade after the subject trailer was manufactured in order to develop a proposed alternative design for this case, we question whether the plaintiff had a sufficient basis to file this action.

Interrogatory Nos. 14-16, 20/Request Nos. 16-18, 21

Wabash obtained a patent for a side impact guard in 2012 – over a decade after the subject trailer was manufactured. Neither that patent nor any other engineering work after that time would be relevant to what Wabash (or any other trailer manufacturer) could have done or may have been considering in 2000. You state that the plaintiff is entitled to information regarding "what led Wabash to create a device to address [side impact] risks, and the design of the device developed to address these risks." Those statements incorrectly assume that Wabash has created a device that addresses side impact risks. At most, Wabash has a conceptual model; it does not have a side impact guard that it has offered for sale, nor does any other trailer manufacturer. We do not,

therefore, believe the plaintiff is entitled to the discovery of Wabash's highly proprietary designs and engineering work on its conceptual model, and we have grave concerns about making such information available to any expert the plaintiff may retain in this case. Specifically, to the extent any such expert is also involved in the trailer manufacturing industry or is involved in attempting to develop a marketable side impact guard, Wabash would be putting itself at a significant commercial disadvantage by providing its proprietary information to a competitor. Particularly given the passage of so many years between the manufacture of the subject trailer and Wabash's design efforts, we do not believe this information is proportional to the needs of the case.

Interrogatory No. 22/Request Nos. 21-25

Wabash is a defendant in one other case involving a side impact collision. The case involves a truck driver who ran through a stop sign at a high rate of speed, with the plaintiff's car contacting the trailer near the rear wheels and being dragged for a considerable distance. The circumstances of that case are completely different than those in this case, and we stand by our objections. We can, however, tell you that Wabash has not given a deposition in that case.

Request Nos. 20 and 33

Responding to these requests would require Wabash to produce a majority of its engineering files for dry van trailers, as a significant aspect of trailer design is the minimization of the trailer's weight. In fact, it would be difficult to determine which of Wabash's engineering files would not be responsive to this request, as the addition of weight is a consideration in virtually every aspect of trailer design. We stand by our objections.

We have also reviewed your notice of the Rule 30(b)(6) deposition of Wabash. We have not yet confirmed whether the date you selected will work for Wabash's designee, and the location will need to be changed to Indianapolis rather than Lexington. More importantly, we believe all of the discovery issues raised in your letter need to be resolved before the deposition takes place, as the notice includes topics related to those same issues.

Sincerely,

Brian M. Johnson

cc: Mark C. Walker