IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LINDA HAUCK, *as personal*
*representative of the Estate of*
*Deborah A. Chambers,*

       Plaintiff,

vs.                                  No. CV 18-471 KG/LF

WABASH NATIONAL CORPORATION,

       Defendant.

MEMORANDUM OPINION AND ORDER

       This matter is before the Court on Defendant Wabash National Corporation's (Wabash) Motion to Exclude Plaintiff's Expert Testimony on Non-economic Damages (Motion) (Doc. 157). The Motion is now fully and timely briefed. *See* (Docs. 160, 165). The Court notes jurisdiction under 28 U.S.C. § 1332. After review of the parties' briefing and the relevant law, the Court grants Wabash's Motion to Exclude (Doc. 157).

   *I.*     *Background*

       This Motion is the last of the parties' six pretrial motions posturing this case for trial. *See* (Docs. 136, 137, 153, 154, 155, 157). Presently, Wabash contends that the Court should exclude certain portions of Plaintiff Linda Hauck's expert report, authored by economist Dr. Stan Smith. (Doc. 157) at 5. Specifically, Wabash seeks exclusion of Dr. Smith's opinion calculating decedent Deborah Chambers' "loss of value of life" or "loss of enjoyment of life," resulting from her vehicle under-riding a Wabash trailer. *Id.* at 2 (hereinafter "hedonic damages"). In support, Wabash claims Dr. Smith's hedonic-damage calculation is "unreliable, irrelevant, unhelpful to the jury, and inadmissible." *Id.* at 6.

In response, Ms. Hauck argues that New Mexico courts permit expert testimony on hedonic damages and, as such, Dr. Smith should be permitted to proffer his calculation before the jury. (Doc. 160) at 7. In addition, Ms. Hauck claims that Dr. Smith properly disclosed his opinion in accordance with Federal Rule of Civil Procedure 26. *Id.* at 11. Thus, because New Mexico law permits admission of hedonic damages and Dr. Smith properly disclosed his anticipated testimony, Ms. Hauck requests that this Court deny Wabash's Motion for exclusion. *Id.* at 17.

II.    *Standard*

Federal Rule of Evidence 702 governs the admissibility of expert testimony, directing that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Under Rule 702, a district court must conduct a two-step "gatekeeping" analysis to determine the admissibility of expert opinions. *Kumho Tire., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (citing *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579 (1993)); *Milne v. USA Cycling, Inc.*, 575 F.3d 1120, 1134 (10th Cir. 2009). First, a court must assess whether the expert is "qualified," by ascertaining their "knowledge, skill, experience, training, or education." *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004) (citing Fed. R. Evid. 702). For an expert to be deemed qualified under the Federal Rules, their testimony must be "relevant" to the issues before the court. *Daubert*, 509 U.S. at 591. Second, a court must

determine whether the expert's opinion is "reliable." *Id.* at 593-94.  An expert's opinion must be

both relevant and reliable to be admissible.  *Milne*, 575 F.3d at 1134.

       The party that proffers the expert testimony bears the burden of proving its compliance

with Rule 702 by a preponderance of the evidence.  Fed. R. Evid. 702 Advisory Committee Note

(2000) (citing Fed. R. Evid. 104(a)).  Nonetheless, a court should liberally admit expert

testimony.  *United States v. Gomez*, 67 F.3d 1515, 1526 (10th Cir. 1995) (citing *Daubert*, 509

U.S. at 588).  Furthermore, a court is afforded broad "discretion in determining the competency

of an expert." *Id.* at 1525 (internal citation omitted).

    *III.*    *Discussion*

       To begin, Wabash argues that the Court should preclude Dr. Smith from proffering

testimony on the loss of "guidance and counseling damages," "society and relationship

damages," and "support and accompaniment damages." (Doc. 157) at 14-17.  In her response,

Ms. Hauck agrees to withdraw these damage claims, and explains that she will not seek

admission of these opinions at trial. (Doc. 160) at 3.  As a result, the Court grants Wabash's

request to exclude Dr. Smith's testimony on the loss of guidance, counselling, society,

relationship, support, and accompaniment damages.

       Wabash's remaining argument regarding Dr. Smith's hedonic-damage opinion is two-

fold.  First, Wabash asserts that, under current Tenth Circuit law, testimony quantifying a "dollar

amount" of hedonic damages is inadmissible. (Doc. 157) at 8.  Second, Wabash asserts that

although testimony regarding the "concept" of hedonic damages is generally admissible, Dr.

Smith failed to properly disclose these opinions under Rule 26(a).  *Id.* at 8-14.  For these reasons,

Wabash asserts that the Court should exclude the entirety of Dr. Smith's testimony on hedonic

damages.

    *A.   Whether Dr. Smith's hedonic damage figure is admissible*

    Both Ms. Hauck and Wabash agree that the principles advanced by the Tenth Circuit in

*Smith v. Ingersoll-Rand, Co.* apply, but the parties disagree on the scope of its applicability to

Dr. Smith's current hedonic-damage opinion.   (Doc. 157) at 6-7 (citing *Smith v. Ingersoll-Rand*

*Co.*, 214 F.3d 1235 (10th Cir. 2000)); (Doc. 160) at 9-10 (same).   In *Ingersoll-Rand*, the Tenth

Circuit reviewed a district court's decision to admit certain portions of Dr. Smith's hedonic-

damage opinion.   *Ingersoll-Rand, Co.*, 214 F.3d at 1245.   Importantly, the Tenth Circuit

explained that, "[t]roubled by the disparity of results reached in published value-of-life studies

and skeptical of their underlying methodology, the federal courts which have considered expert

testimony on hedonic damages in the wake of *Daubert* have unanimously held quantifications of

such damages inadmissible." *Id.* (collecting cases).   However, because the issue was not directly

before it on appeal, the Tenth Circuit explained that it would not "determine the admissibility of

studies purporting to quantify hedonic damages[.]" *Id.*   The Court, therefore, refused to "venture

[an] opinion" on the issue.   *Id.*

    Nonetheless, the Tenth Circuit opined that the district court's decision "excluding the

quantification which has troubled both courts and academics, but allowing an explanation

adequate to insure the jury did not ignore a component of damages allowable under state law"

was "appropriate[.]" *Id.* at 1246.   Later, the Tenth Circuit noted that "importantly," Dr. Smith

"made no attempt to apply the facts of th[at] case to the criteria he proffered to the jury," and he

"did no more than explain his interpretation of the meaning of hedonic damages[.]" *Id.*

    Following the Tenth Circuit's guidance in *Ingersoll-Rand*, courts in this district have

adopted the position that "[e]xperts may not quantify hedonic damages, but [they] may provide

qualitative testimony defining hedonic damages and explaining what factors are relevant to

valuing [them.]" *Walker v. Spina*, 359 F.Supp. 3d 1054, 1074 (D.N.M. 2019) (Browning, J.) (collecting cases); *see also Fancher v. Barrientos*, 2015 WL 11142939, at *3 (D.N.M.) (Parker, J.) (holding that expert cannot testify to "monetary value" of hedonic damages or express any opinion on "benchmark figure, guideline, or range of values to be used in calculating such damages"); *BNSF Railway Co. v. LaFarge Southwest, Inc.*, 2009 WL 4279849, at *2 (D.N.M.) (Armijo, J.) (explaining that "majority rule in federal courts … is that expert testimony which places a *dollar figure* before the jury in an attempt to *quantify* the value of a human life is inadmissible") (emphasis in original). Consistent with this interpretation, this Court has likewise concluded that "the majority rule in federal court is that placing a dollar amount … on hedonic damages does not meet the relevance and reliability factors required to admit expert testimony." *Kretek v. Board of Comm. of Luna Cnty.*, 2014 WL 11621694, at *1 (D.N.M.) (Gonzales, J.); *see also Rivera v. Volvo Cars of North America, LLC*, 2015 WL 11118067, at *1 (D.N.M.) (Gonzales, J.) (same).

In arguing that Dr. Smith's hedonic-damage figure is nevertheless admissible, Ms. Hauck contends that the Tenth Circuit did not "per se" outlaw the admission of hedonic-damage testimony in *Ingersoll-Rand* but, rather, left the question undecided. (Doc. 160) at 9. The Court agrees with this assessment. However, both this Court and all others in this district have interpreted the *Ingersoll-Rand* decision to implicitly endorse the position that hedonic-damage quantifications are inadmissible under *Daubert*. Indeed, Ms. Hauck does not direct this Court to any authority that interprets the Tenth Circuit's *Ingersoll-Rand* decision in her favor. This argument, therefore, is unpersuasive.

Next, Ms. Hauck argues that, regardless of the conclusions endorsed in *Ingersoll-Rand*, New Mexico law permits expert testimony quantifying hedonic-damage awards. *Id.* To support

this contention, Ms. Hauck cites *Romero v. Byers* and *Sena v. N.M. State Police*. *See id.* (citing *Romero v. Byers*, 1994-NMSC-031, 117 N.M. 422, ¶¶ 15-19; *Sena v. N.M. State Police*, 1995-NMCA-003, 119 N.M. 471, ¶¶ 26-27).[1]  However, Ms. Hauck ignores that both these cases preceded the Tenth Circuit's *Ingersoll-Rand* opinion applying New Mexico law in the year 2000. Therefore, as the most recent case interpreting expert testimony on hedonic-damage awards under New Mexico law, the principles expressed in *Ingersoll-Rand* plainly control.

As a result, the Court concludes that Dr. Smith's testimony assigning a monetary value to Ms. Chambers' hedonic-damage award is inadmissible under *Daubert* and its progeny. In reaching this decision, the Court notes the volume of district court cases supporting this conclusion and the lack of authority concluding the opposite. Therefore, Dr. Smith's testimony assigning a dollar figure to Ms. Chambers' hedonic-damage calculation is inadmissible under Federal Rule of Evidence 702.  For this reason, Ms. Hauck is precluded from eliciting this testimony from Dr. Smith before the jury.

### B.  Whether Dr. Smith can testify on the "concept of" hedonic damages

Next, Wabash contends that although expert testimony "explaining the concept of" hedonic damages is generally admissible in federal court, the Court should nevertheless exclude Dr. Smith's testimony.  (Doc. 157) at 8.  In support, Wabash claims that Dr. Smith's report failed to fully disclose this testimony, requiring its exclusion under Federal Rule of Civil Procedure 37. *Id.* at 10.  Ms. Hauck opposes Wabash's request for the full-sail exclusion of Dr. Smith's testimony on these grounds.  (Doc. 160) at 11-12.

---

1.  Dr. Smith, in his deposition, also alluded to *Romero* and *Sena*. *See* (Doc. 157-2) at 5 (stating that "[n]ot every judge understands that … the Supreme Courts [*sic*] of New Mexico, in two separate cases, have [*sic*] explicitly stated that a judge may permit such testimony without oversight needed").

In their report, an expert witness must provide "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). Under Federal Rule of Civil Procedure 37(c)(1), "[a] party that without substantial justification fails to disclose information required by Rule 26 … shall not, unless such failure is harmless, be permitted to use as evidence at a trial … any witness or information not so disclosed." The Tenth Circuit has delineated factors to guide the district court in determining "whether a Rule 26(a) violation is justified or harmless" under Rule 37. *Woodworkers Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999). These factors include: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Id.* The inquiry "is entrusted to the broad discretion of the district court." *Id.*

Here, Dr. Smith does not set forth the methodology he employed to calculate the hedonic-damage award. *See* (Doc. 157-1) at 10. Instead, his opinion mirrors the Court's *Daubert* inquiry to support his conclusion. *Id.* at 10-11, 15 (explaining how evidence satisfies "four criteria" set forth in *Daubert*, including "testing of the theory and science, peer review, known or potential rate of error, and general acceptance"). Ms. Hauck does not dispute this contention. (Doc. 160) at 11 (arguing that "[t]o the extent there is a lack of clarity in Dr. Smith's report, the harsh sanction of exclusion of his otherwise admittedly admissible opinions is unwarranted"). Rather, she asserts that notwithstanding the report's incompleteness, Dr. Smith's failure to properly delineate his proposed testimony is harmless. *Id.* at 12. In support, Ms. Hauck claims that "Wabash [] had an opportunity to fully explore Dr. Smith's opinion" during his deposition, but it "chose not to." *Id.* at 14.

The Court disagrees that Wabash could have cured the inadequacies apparent in Dr. Smith's report.  Indeed, Dr. Smith repeatedly refused to answer detailed questions propounded by defense counsel, stating:  "I thought that was the subject of this conversation," "Depends on what you mean," "Isn't that what I just testified to," and "We discussed this."  (Doc. 157-2) at 6. At times, Dr. Smith informed defense counsel on his interpretation of proper deposition procedure, instructing counsel to "withdraw that question if you don't permit me to answer it with clarification."  *Id.* at 7.  When defense counsel explained that he was "going to ask [] a different question," Dr. Smith responded, "I'll just say that I can't answer the question because you wouldn't clarify it.  That's fine.  You need that.  I'm just informing you, without clarification, I'm unable to answer the question."  *Id.*  Later, defense counsel asked Dr. Smith if there was "any particular reason [he was] being so argumentative."  *Id.*  In response, Dr. Smith stated, "I thought I was being sweet as apple pie.  I even put in a few jokes … Maybe your sense of humor is not so great today…."  *Id.* at 7-8.

When Dr. Smith did choose to answer defense counsel's questions, many of his responses were unhelpful or sarcastic.  For example, in response to defense counsel's inquiry of Ms. Chambers' training in psychology, Dr. Smith opined that she attended "what some people call the best training on the planet, which is the school of life."  *Id.* at 10; *see also id.* at 11 (citing "school of life, which some people regard as the finest training any human should pay attention to").  When defense counsel attempted to clarify whether Dr. Smith knew if Ms. Chambers had a degree in psychology, Dr. Smith refused to respond and, instead, asked the court reporter to "read back" his previous answer.  *Id.* at 10-11; *see also id.* at 14 (stating "[y]ou asked that question earlier, I gave a rather lengthy answer, if you would be willing to accept my previous answer, so I don't have to repeat it or ask the court reporter to go find it").

In response to questions on his loss of consortium opinion, Dr. Smith stated he would "leave it up to others to argue over how many angels can dance on the head of a pin[,]" and explained "[t]here are 40 billion words that didn't find their way into the report. I can only tell you what is in the report and why. I can't tell you why Greek words aren't in the report, Latin words are not in the report. There's billions of words not in the report." *Id.* at 18, 19; *see also id.* at 22 (hypothesizing whether "Tinker Bell does come back from Neverland and sprinkle gold and magic dust on the children"); *id.* at 12-13 (Dr. Smith asking "do you happen to know what degrees Bernie Madoff had? It would surprise you, a man who managed billions of dollars. Are you aware that he had a bachelor's degree or not?"). In short, Ms. Hauck's contention that Wabash could have cured the prejudice of Dr. Smith's nondisclosure through pointed questioning during his deposition is plainly contradicted by the record.

Next, Ms. Hauck claims that Wabash is not prejudiced by the omissions in Dr. Smith's report because it knows the testimony Dr. Smith may proffer at trial based on the prior cases where he testified. (Doc. 160) at 12-13. This argument is likewise unpersuasive. To assert that the onus is on defense counsel to ascertain the scope of Dr. Smith's expected testimony is inconsistent with federal practice. *See* Fed. R. Civ. P. 26(a)(2)(B) (explaining that expert witness disclosure "must be accompanied by a written report—*prepared and signed by the witness*… [which] *must* contain … a *complete* statement of all opinions … and the basis and reasons for them") (emphasis added). This is particularly true where, as here, Dr. Smith has proffered testimony in "thousands" of cases. (Doc. 157-2) at 3. Plainly stated, suggesting that defense counsel "guess" what Dr. Smith may choose to introduce in this case based on his prior testimony is not a viable alternative to adequate disclosure under Rule 26.

Lastly, Ms. Hauck claims that, instead of excluding Dr. Smith's opinion on hedonic damages, the appropriate remedy is for the Court to grant Wabash "an opportunity to re-depose" him. *Id.* at 15. However, even if the Court permitted Wabash to re-depose Dr. Smith, he has demonstrated that he is unwilling to cooperate or otherwise respect the decorum commanded by a deposition taken for use in federal court. Thus, the Court is also unpersuaded on the efficacy of Ms. Hauck's proposed alternative remedy to cure the inadequacies in Dr. Smith's disclosures.

In conclusion, Dr. Smith's report did not provide an explanation of his expected testimony on general hedonic-damage calculations. Nevertheless, instead of supplementing this nondisclosure with detailed deposition testimony, Dr. Smith refused to fruitfully participate. Wabash's attempts to remedy Dr. Smith's nondisclosure were to no avail, and it is not now required to drudge through thousands of expert reports prepared by Dr. Smith to ascertain what he may present before the jury in this case. In addition, Dr. Smith has demonstrated that any attempt to re-depose him would be unproductive. Therefore, the Court concludes that, given the prejudice to Wabash and the inability to adequately cure Dr. Smith's nondisclosure, this testimony is excluded.

IV.    *Conclusion*

Ms. Hauck is prohibited from eliciting testimony from Dr. Smith regarding her entitlement to non-economic damages, including hedonic, loss of guidance, counselling, society, relationship, support, and accompaniment damages. In pertinent part, Dr. Smith's opinion assigning a dollar-amount to Ms. Chambers' hedonic-damage award is unreliable pursuant to *Daubert* and its progeny. Moreover, the Court concludes that Dr. Smith's failure to disclose his proposed testimony regarding the "general scope of hedonic damages" is incurable and prejudicial. Therefore, Dr. Smith's opinions quantifying a hedonic-damage award and generally

explaining the concept are both properly excluded.  For these reasons, the Court grants Wabash's Motion to Exclude (Doc. 157).

    IT IS ORDERED.

                                    _____
                                    UNITED STATES DISTRICT JUDGE